UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NEW YORK CENTRAL MUTUAL FIRE
INSURANCE COMPANY, as subrogee of
Scott and L.K. Kilgore,

Plaintiff,

Case # 18-CV-294-FPG

v.

DECISION AND ORDER

ELECTROLUX HOME PRODUCTS, INC.,

Defendant.

## INTRODUCTION

Plaintiff New York Central Mutual Fire Insurance Company ("NY Central"), as subrogee

of Scott and L.K. Kilgore, brings this products liability action against Defendant Electrolux Home

Products, Inc., which manufactured an allegedly defective clothes dryer. ECF No. 1. On October

1, 2019, Electrolux moved for summary judgment on all claims. ECF No. 24. NY Central opposes

the motion. ECF No. 28. For the following reasons, Electrolux's motion is GRANTED IN PART

and DENIED IN PART.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material

facts are genuine where the evidence is such that a reasonable jury could return a verdict for the

non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding

whether genuine issues of material fact exist, the court construes all facts in a light most favorable

to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See*

*Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party

"may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND

The product at issue is a gas-fueled clothes dryer manufactured by Electrolux. Scott Kilgore purchased one of these dryers around 2010. ECF No. 28-4 at 4-5. After moving the dryer into his home, he installed a conversion kit in the dryer so that propane, rather than natural gas, could be used to fuel it. *Id.* at 6.

On March 11, 2015, Kilgore's girlfriend started the dryer on a normal dry cycle.[1] ECF No. 24-10 at 2. Soon after starting the dryer, she heard a loud "pop" sound and then saw fire inside it. NY Central alleges that the fire spread and ultimately "resulted in extensive damages to the . . . premises." ECF No. 1 at 3.

NY Central relies on the opinion of Gary S. Hauf, a forensic electrical engineer, to argue that a defect in the dryer caused the fire. Specifically, Hauf opines that the gas valve—which controls the introduction of gas into the heating system—failed and allowed gas to escape at the time the dryer was turned on. ECF No. 28-1 at 4. When the ignitor started, this escaped gas ignited and started the fire. *Id.* However, Hauf concedes that, because the gas valve was destroyed in the fire, he cannot identify the specific defect that caused the gas leak. *See* ECF No. 24-11 at 17 (stating that he "can't really tell you what the exact failure was" and listing some possibilities).

In February 2018, NY Central—Scott Kilgore's insurer—brought this action. ECF No. 1. It raises three claims: (1) strict products liability (on grounds of design defect, manufacturing defect, and failure to warn), (2) negligence, and (3) breach of warranty.

---

[1] There are several different narratives concerning the exact sequence of events leading to the fire, *see* ECF No. 24-13 at 51, but the distinctions are immaterial for purposes of the present motion.

**DISCUSSION**

Electrolux argues that it is entitled to summary judgment on all claims. On the products liability claim, Electrolux argues that NY Central has not presented sufficient evidence to establish a design defect or failure to warn, and that its claim of a manufacturing defect is speculative. Electrolux contends that the negligence claim must be dismissed on the same basis. It also argues that the breach of warranty claim fails because it is untimely. The Court addresses each claim below.

## I.    Strict Products Liability

In its complaint, NY Central argues that Electrolux is liable for strict products liability because its dryer was "defectively designed and/or manufactured" and because Electrolux "failed to warn of the defects and dangers inherent in the use" of the dryer. ECF No. 1 at 5.

"Under New York law, one engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect."[2] *Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, No. 15-CV-6519, 2019 WL 5103870, at *6 (E.D.N.Y. Oct. 11, 2019) (internal quotation marks and brackets omitted). "[T]o prevail in a products liability action, the plaintiff need only prove (1) that the product was defective, and (2) that the defect was a substantial factor in bringing about the injury." *Id.* (internal quotation marks omitted).

"With respect to the first element, three theories of product defect are recognized: defective design, defective manufacturing, and failure-to-warn." *Id.* at *7. Although NY Central identified all three theories in its complaint, it has now limited its claim to one for manufacturing defect. *See* ECF No. 28-5 at 2, 6. "[I]n strict products liability cases involving manufacturing defects, the harm arises from the product's failure to perform in the intended manner due to some flaw in the

---

[2] Neither party disputes that New York law applies in this case. ECF No. 24-3 at 8; ECF No. 28-5 at 5.

fabrication process." *Zsa Zsa*, 2019 WL 5103870, at *7; *Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 510 (S.D.N.Y. 2018) ("[A] manufacturing defect claim is based on an allegation that the specific product that caused plaintiff's injury was not manufactured as designed.").

To be entitled to summary judgment, "a defendant must submit admissible proof establishing that the product was not defective as a matter of law." *Boots v. Stanley Black & Decker, Inc.*, 132 F. Supp. 3d 307, 315 (N.D.N.Y. 2015). "The initial burden rests with the Defendant to show that the product was not defective when the product left the manufacturer." *Id.* (internal quotation marks omitted). This burden has been described as a "prima facie showing." *Williams v. River Place II, LLC*, 145 A.D.3d 589, 590 (N.Y. App. Div. 2016); *Boots*, 132 F. Supp. 3d at 314, 316. "If the defendant meets this burden, then the plaintiff must" submit (1) "direct evidence that a defect existed when the product left the manufacturer," or (2) "in the absence of evidence identifying a specific flaw, . . . prove that the product did not perform as intended and exclude all other causes for the product['s] failure that are not attributable to the defendant." *Boots*, 132 F. Supp. 3d at 315 (internal brackets omitted). Because NY Central's expert cannot identify the specific defect with the gas valve, it must rely on the circumstantial approach to proving a manufacturing defect.[3]

The Court first addresses whether Electrolux has satisfied its initial burden to show "that the product was not defective when the product left the manufacturer." *Id.* (internal quotation marks omitted). Where the allegedly defective product is not available for testing or inspection, the manufacturer may present circumstantial evidence to show that the manufacturing process was not to blame for a defect. This may include evidence that the product was "designed and

---

[3] It is unclear whether NY Central disputes that the circumstantial approach applies. *See* ECF No. 28-4 at 7. Hauf's testimony establishes, however, that he cannot identify "what the exact failure was" because the gas valve was destroyed. ECF No. 24-11 at 17. In such scenarios, the circumstantial approach applies. *Accord Speller v. Sears, Roebuck & Co.*, 790 N.E.2d 252, 254-55 (N.Y. 2003) (applying circumstantial approach where allegedly defective wiring in product was destroyed in fire and thus "it was impossible to examine or test the wiring to determine the precise nature of the defect").

manufactured under state of the art conditions" and "complied with applicable industry standards."

*Ramos v. Howard Indus., Inc.*, 10 N.Y.3d 218, 223-24 (2008); *see also Williams*, 145 A.D.3d at 590.

Here, Electrolux has satisfied its initial burden. Electrolux offers the affidavit of Peter Silman, a product safety engineer at Electrolux. He avers that Electrolux gas dryers are manufactured and tested to meet industry standards, and Electrolux requires suppliers of component parts to "submit documentation . . . demonstrating testing, quality control and compliance with industry standards to the subject parts." ECF No. 24-14 at 2. Manufacturing that occurs at Electrolux and at suppliers' facilities "represent the state-of-the-art with respect to quality control, testing and standards compliance." *Id.* Silman also notes that he has found "no reports of substantially similar incidents" concerning a defect in its gas valves, and no data "suggesting a pattern of occurrence or rate of failure that would support" NY Central's claim. *Id.* In short, Silman asserts that Electrolux's manufacturing process is such that it would be unlikely to manufacture a defective gas valve, and the absence of any other defects of this type bears this assertion out. NY Central does not dispute Electrolux's claims that its materials are manufactured in state-of-the-art facilities complying with industry standards, and it does not present any evidence that Electrolux's quality control devices, standards, testing, or facilities "were prone to failure or functioned other than as intended."[4] *Tardella v. R.J.R. Nabisco, Inc.*, 178 A.D.2d 737, 737-38 (N.Y. App. Div. 1991).

---

[4] The only dispute NY Central raises is that there is no evidence that the dryer at issue was individually tested. ECF No. 28-4 at 17. Although individual quality-control testing would certainly bolster Electrolux's claim that there was no manufacturing defect, *see, e.g.*, *Ramos*, 10 N.Y.3d at 223-24, NY Central fails to explain how the absence of individual testing alone prevents Electrolux from meeting its burden. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Accordingly, Electrolux's evidence is sufficient to make a prima facie case that the dryer at issue did not have a defect when it left Electrolux's manufacturing process. In addition, Electrolux's expert identified an alternative cause of the fire not attributable to Electrolux: Scott Kilgore's improper conversion of the dryer to propane fuel.[5] ECF No. 24-13 at 52.

The burden therefore shifts to NY Central to "prove that the product did not perform as intended" and to "exclude all other causes for the product['s] failure that are not attributable to the defendant." *Boots*, 132 F. Supp. 3d at 315. Insofar as the dryer caused a fire, NY Central has shown that the product did not perform as intended. The only question is whether NY Central has raised "a triable question of fact by offering competent evidence which, if credited by the jury, is sufficient to rebut defendant's alternative cause evidence." *Ramos*, 10 N.Y.3d at 224.

For purposes of summary judgment, NY Central has presented sufficient evidence to rebut Electrolux's proffered alternative cause. As noted, Electrolux's expert theorizes that Kilgore incorrectly converted the dryer from gas to propane, specifically by failing to install an air shutter. ECF No. 24-13 at 48. The expert notes that if an air shutter is not properly adjusted, the propane will not combust correctly, which, over time, can cause soot buildup. *Id.* at 52. Soot will collect throughout the natural air path in the dryer, and can be ignited by the flame of the gas burner. *Id.* Although Electrolux's expert opines that the exact cause of the fire cannot be determined in light of "multiple possible causes, multiple [narrative] accounts [of the fire], [and] extensive fire damage to the gas dryer," he does believe that a chain reaction attributable to soot buildup is consistent with some of the evidence in this case. *Id.*

Hauf, NY Central's expert, disagrees with this theory. First, he notes that there was no evidence of soot in the remains of the gas dryer. *See* ECF No. 24-11 at 41. Second, improper

---

[5] Electrolux's expert also identified lint accumulation as a possible alternative cause of the fire. ECF No. 24-13 at 52. Because Electrolux does not address that alternative cause in its motion, the Court need not do so. *See Zannino*, 895 F.2d at 17; *cf. Zsa Zsa*, 2019 WL 5103870, at *20 ("The only alternative explanations that the plaintiff is required to rule out are those that the *defendant* has proposed.").

conversion causing soot would have been obvious because it would "stink like hell on [one's] clothes" and would scatter black specks on the load of laundry. *Id.* at 54, 84. Third, Hauf found the soot-buildup theory inconsistent with the circumstances of the fire. Scott Kilgore's girlfriend indicated that she heard a "popping" sound from the dryer soon after turning it on, and then saw a fire in the dryer. Hauf states that soot "wouldn't cause a popping problem" and would have "taken a long time to heat to the point where it started a fire." *Id.* at 42.

A reasonable jury could credit Hauf's testimony and conclude that NY Central had excluded improper propane conversion as the cause of the fire.[6]

It is worth pointing out that, in its briefing, Electrolux does not explain why Hauf's rejection of the soot-buildup theory is incorrect as a matter of law. Instead, Electrolux focuses on an entirely different alternative-cause theory, one which its expert did not identify in his report: that Scott Kilgore somehow mishandled the gas valve and damaged it when he converted the dryer to propane fuel. *See* ECF No. 24-3 at 6.

Regardless, and contrary to Electrolux's argument, NY Central presented sufficient evidence to also exclude this alternative cause. Hauf stated that a propane conversion does not require one to "disassemble the valve" or otherwise "mess[] around with [its] internal components." ECF No. 24-11 at 59. Kilgore's interactions would have been fairly limited—*i.e.*, replacing a pin and putting a nozzle on the gas valve. *Id.* at 58-59, 61-62. Based on this, Hauf does not believe that "anything [Kilgore] did to it would have caused a failure" of the type that happened. *Id.* at 61. Similarly, Kilgore himself testified that the conversion was a fairly straightforward, non-invasive process. *See* ECF No. 24-9 at 9-10, 31-32. Kilgore's long experience in the propane industry and in performing such conversions bolsters NY Central's

---

[6] Electrolux states in passing that Hauf's testimony is inadmissible under Federal Rule of Evidence 702. *See* ECF No. 24-3; ECF No. 29 at 2. Because Electrolux does not develop this argument, the Court will not address it. *See Zannino*, 895 F.2d at 17.

argument that Kilgore's actions did not damage the gas valve. *See* ECF No. 24-9 at 10; ECF No. 28-5 at 11. All of this is competent evidence which, "if credited by the jury," is "sufficient to rebut" Electrolux's claim that Kilgore damaged the gas valve. *Speller*, 790 N.E.2d at 256.

In short, there are genuine issues of material fact as to whether NY Central has excluded the alternative causes of the fire proposed by Electrolux. Therefore, Electrolux is not entitled to summary judgment on the products liability claim.[7]

## II.     Negligence

Electrolux raises the same arguments with respect to the negligence claim as it does for the products liability claim. *See* ECF No. 24-3 at 9; ECF No. 29 at 7. In New York, "a [p]laintiff's claim based upon an alleged . . . manufacturing defect sounding in either negligence or strict liability are functionally equivalent and will be analyzed concurrently." *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 887 (E.D.N.Y. 2018) (collecting cases). Therefore, for the same reasons discussed in Section I, *supra*, Electrolux is not entitled to summary judgment. *Accord Almonte v. Averna Vision & Robotics, Inc.*, 128 F. Supp. 3d 729, 754 n.20 (W.D.N.Y. 2015).

## III.     Breach of Warranty

Finally, Electrolux argues that NY Central's breach-of-warranty claim is untimely. ECF No. 24-3 at 12. The Court agrees.

New York law "establishes a four-year statute of limitations for breach of warranty claims," which begins to run when "the product is placed in the stream of commerce or at the time of sale by the manufacturer." *Baker v. Stryker Corp.*, 770 F. App'x 12, 15 (2d Cir. 2019) (summary

---

[7] Much of Electrolux's briefing is devoted to challenging Hauf's theory that the gas valve had a manufacturing defect that caused the fire. But, as the foregoing discussion demonstrates, Hauf's own theory for the fire's cause is only marginally relevant, if at all. It is well-established that "a plaintiff is not required to identify a specific defect in a circumstantial case." *Ramos*, 10 N.Y.3d at 224; *see also Zsa Zsa*, 2019 WL 5103870, at *10 ("[A] plaintiff attempting to demonstrate a product defect circumstantially need not explain specifically what constituent part of the product failed . . . ." (internal quotation marks omitted)). Rather, what matters is that the incident—like the one here—"was of a kind that ordinarily occurs as a result of product defect." *Speller*, 790 N.E.2d at 255.

order).  Because NY Central filed suit in February 2018, any claims that accrued before February 2014 would be untimely.  The record evidence shows that Kilgore purchased the dryer sometime before 2012.  *See* ECF No. 24-9 at 23, 35.  Therefore, this claim is untimely and must be dismissed. *See Baker*, 770 F. App'x at 15.

## CONCLUSION

For the foregoing reasons, Defendant Electrolux Home Products, Inc.'s motion for summary judgment (ECF No. 24) is GRANTED IN PART and DENIED IN PART.  The products liability and negligence claims premised on a manufacturing-defect theory survive, but all other claims are dismissed.

The Court understands that mediation is scheduled for March 18, 2020.  By separate order, the Court will schedule a status conference after the mediation to discuss the progress of this litigation.

IT IS SO ORDERED.

Dated: March 9, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court